Brad T. Hunsicker
(Wyoming State Bar No. 7-4579)
WINSHIP & WINSHIP, P.C.
PO Box 548
Casper, WY 82602
(307) 234-8991

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TODD ADAM HILDEBRAND, | ) | Case No. 12-20909 |
| KIMBERLY SUE HILDEBRAND, | ) | CHAPTER 11 |
| | ) | |
| Debtors-in-Possession. | ) | |

## DEBTORS'-IN-POSSESSION CHAPTER 11 PLAN OF REORGANIZATION

**COME NOW** the above named Debtors-in-Possession, by and through their counsel, and pursuant to 11 U.S.C. § 1121(a) and (b) hereby propose the following Chapter 11 Plan of Reorganization:

## INTRODUCTION

The Debtors, as the Debtors-in-Possession in this Chapter 11 case, propose this Plan pursuant to 11 U.S.C. § 1121(a) and (b) of the Bankruptcy Code. The Plan provides distribution only to holders of Allowed Claims. The Plan provides that on the Effective Date, or as soon as practicable thereafter, the Debtors will begin making distributions from the Estate Assets, which the Debtors hold on behalf of the creditors. Parties-in-interest should refer to the Disclosure Statement filed with the Court in conjunction with this Plan for a summary and analysis of the Plan.

Under 11 U.S.C. § 1125(b), a vote to accept or reject the Plan cannot be solicited from a holder of an Allowed Claim until the Disclosure Statement is approved by the Court and is distributed to holders of Claims.  ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I:  DEFINITION AND RULES OF CONSTRUCTION

### A.    Rules of Interpretation and Construction:

For purposes of the Plan: (i) any references in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified or supplemented; (ii) unless otherwise specified, all references in the Plan to sections, articles, schedules and exhibits are references to sections, articles, schedules and exhibits to the Plan; (iii) the words "herein", "hereof", "hereunder" and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (iv) captions and headings contained in the Plan are inserted for convenience and reference only and are not intended to be part of or to affect the interpretation of the Plan; (v) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine or neuter gender; and, (vi) the rules of construction as set forth in 11 U.S.C. § 102 shall apply to the Plan.

### B.    Defined Terms:

1.    <u>Administrative Claim</u>:    A claim for costs and expenses of administration

2

under 11 U.S.C. §§ 503(b) and 507(b) of the Bankruptcy Code, including compensation for legal, accounting and other services and reimbursement of expenses awarded or allowed under the Bankruptcy Code and all fees and charges assessed against the Bankruptcy Estate under Chapter 123 of Title 28 of the United States Code.

2.   <u>Allowed</u>:  As used in this Plan means:

a.   with respect to Administrative Claims, that amount allowed by a Final Order of the Court;

b.   with respect to a Secured Claim in Class 1 through Class 6, the amount allowable under 11 U.S.C. §§ 502, 506 and/or 1123(b)(5) with respect to the collateral.

c.   with respect to any Unsecured Claim in Class 8, that amount set forth in Debtors' Schedules as an undisputed, liquidated and non-contingent debt or that amount allowed (i) by Final Order of the Court or (ii) by stipulation dated on or after the Effective Date as to the amount of the claim and executed by the Debtors;

d.   with respect to any other Claim, only such amount that is allowed: (i) by Final Order; or, (ii) by stipulation dated on or after the Effective Date as to the amount and nature of the Claim and executed by the Debtors; or

e.   a Claim that is Allowed pursuant to this Plan.

3.   <u>Allowed Business Expense(s)</u>:  Debtors' monthly expenses as set forth in Exhibit "F" attached to Debtors' Disclosure Statement;

4.   <u>Allowed Living Expense(s)</u>:  Debtors' monthly expenses as set forth in Exhibit "F" attached to Debtors' Disclosure Statement;

3

5. <u>Avoidance Actions</u>:    All claims, rights, causes of action, defenses, counterclaims or offsets of the Bankruptcy Estate, including without limitation any causes of action arising under 11 U.S.C. §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 and/or 553, whether or not asserted or pending on the Effective Date.

6. <u>Bankruptcy Code</u>:    The Bankruptcy Reform Act of 1978, as amended from time to time.  The Bankruptcy Code is located at 11 U.S.C. §§ 101, et seq.

7. <u>Bankruptcy Rules</u>:    The Federal Rules of Bankruptcy Procedure, as amended from time to time.

8. <u>Bankruptcy Estate</u>:    The entity created pursuant to 11 U.S.C. § 541 upon commencement of this bankruptcy case and all of the Estate Assets.

9. <u>Claim</u>:    Any claim, as defined by 11 U.S.C. § 101(5), against the Bankruptcy Estate.

10. <u>Claims Bar Date</u>:    January 23, 2013 for all creditors (except a governmental unit).

11. <u>Class</u>:  Any class of creditors of interests described in Article IV of the Plan.

12. <u>Commercial Property</u>:    Real property located at 1001 4-J Road, Gillette, Wyoming together with improvements thereon, which constitutes the Debtors' place of business as of the Confirmation Date.

13. <u>Confirmation Date</u>:    The date on which the Court enters the Confirmation Order.

14. <u>Confirmation Order</u>:    The Final Order entered by the Court confirming the

4

Plan.

15. Court:   The United States Bankruptcy Court for the District of Wyoming.

16. Debtors:  Todd and Kimberly Hildebrand.

17. Disclosure Statement:   The Disclosure Statement, as amended or modified hereafter, approved by the Court in connection with this Plan.

18. Disputed Claim:   Any Claim that has not been Allowed by compromise or settlement with the Debtors, this Plan or Final Order of the Court.

19. Effective Date:   The fifteenth (15th) business day after the Confirmation Date or, if an appeal is take and the Confirmation Order is stayed, the first business day after the later of the date (a) the stay expires by its own terms, or (b) the order vacating or terminating the stay becomes a Final Order.

20. Estate Assets:   All property of the Debtors as described in: (a) 11 U.S.C. § 541; (b) 11 U.S.C. § 1115(a)(1); and, (c) all proceeds from the disposition of any property described above or income produced therefrom.   "Estate Assets" include Plan Payments. "Estate Assets" does not include Exempt Assets, property that has been sold or disposed of with Court approval or in the ordinary course during this case or property that the Debtor have abandoned or is abandoned as of the Effective Date.

21. Exempt Assets:   Those assets of the Debtors which are exempt pursuant to 11 U.S.C. § 522(b)(3) as identified in the Debtors' Schedules, subject to any Final Order thereon.

22. Final Order:   An order of this Court or, if applicable, a state or federal court

that is no longer subject to appeal, review or certiorari proceedings.

23. <u>General Order 12-02</u>:  The "Order Establishing the Procedure for the Entry of an Individual Debtors Discharge in Chapter 11" entered by the Court on September 12, 2012.

24. <u>Petition Date</u>: September 11, 2012.

25. <u>Plan</u>:  This Plan, either in its present form or as it may be altered, amended or modified in accordance with the Bankruptcy Code or any Final Order of the Court.

26. <u>Plan Payments</u>:   Contributions in cash, cash equivalents or other interests in property made by the Debtors from post-confirmation income after applying all deductions authorized pursuant to the Bankruptcy Code, any Final Order of the Court or this Plan.  Such Plan Payments include Debtors' disposable income.

27. <u>Plan Period</u>:   the Plan Period shall be the six (6) full calendar years following the Effective Date.

28. <u>Priority Tax Claims</u>:   A Claim Allowed under this Plan and in accordance with 11 U.S.C. § 507(a)(8) as a Priority Tax Claim and subject to treatment under Class 7.

29. <u>Pro Rata</u>:  With respect to any distribution on a Claim, the percentage that an Allowed Claim bears to the sum of all Allowed Claims in the same Class.

30. <u>Proceeds</u>:   Any money, funds, cash or cash equivalent derived from or received by the Debtors as a result of the transfer, sale or liquidation of any Estate Asset, less expenses relating to the sale, transfer or liquidation of said Estate Asset, costs of post-confirmation administration of the Bankruptcy Estate and the Estate Assets.  Proceeds shall also include any Plan Payments made by the Debtors.

31. Quarterly UST Fees:  Post-confirmation quarterly fees required to be paid to the United States Trustee Program pursuant to 28 U.S.C. § 1930(a)(6).

32. Residence:   Real property located at 5900 Stone Place Avenue, Gillette, Wyoming together with improvements thereon, which constitutes the primary residence of the Debtors as of the Confirmation Date.

33. Secured Claim:   A Claim Allowed under this Plan as a Secured Claim in Classes 1 through 8.  A Secured Claim may include post-petition interest if permitted under 11 U.S.C. § 506.

34. Unsecured Claim:  Any Claim or portion thereon that is not an Administrative Claim, a Priority Tax Claim or a Secured Claim.

## C.    Governing Law:

Except to the extent that the Bankruptcy Code, the Federal Rules or Final Order of the Court are applicable or deem otherwise, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Wyoming.

## ARTICLE II:  GENERAL

The Debtors are the proponents of the Plan. The Plan contemplates that on the Effective Date, all remaining Estate Assets will be retained by the Debtors, who will hold and control those Estate Assets while implementing the terms of the Plan.  All payments made by the Debtors to holders of Allowed Claims in accordance with this Plan shall be made solely from Estate Assets.  Upon full compliance with this Plan and subject to the entry of a Final

Order of this Court pursuant to General Order 12-02, any remaining Estate Assets or title thereto will immediately return to, vest in and belong to the Debtors.

### ARTICLE III:  TREATMENT OF ADMINISTRATIVE CLAIMS

A.      **Voting Rights of Administrative Claimants:**  Administrative Claims are not designated as a Class pursuant to 11 U.S.C. § 1123(a)(1) and holders of Allowed Administrative Claims are not entitled to vote pursuant to the Bankruptcy Code.

B.      **Payment of Administrative Claims:**  Allowed Administrative Claims shall be paid in cash or cash equivalent from Proceeds on the later of: (i) the Effective Date; (ii) the 15th day after any Final Order awarding or allowing the Administrative Claim; or, (iii) to the extent that Proceeds are not available to pay said Administrative Claims, upon receipt by the Debtors of any Proceeds from the sale, transfer or other disposition of Estate Assets; provided, however, that any unpaid Quarterly UST Fees shall be paid on the Effective Date. After the Effective Date and until the Chapter 11 case is closed, the Debtors shall pay from the Estate Assets or Proceeds thereof all fees incurred under 28 U.S.C. § 1930(a)(6).  After the Effective Date, the Debtors shall serve on the Office of the U.S. Trustee a quarterly financial report for each calendar quarter, or portion thereof, during which the Chapter 11 case remains open.  The quarterly financial report shall include a statement of all payments made from Estate Assets or Proceeds during the quarter pursuant to the Plan or otherwise. As of the date of the Plan, the only known administrative claims consist of the Bankruptcy Estate attorney, Winship & Winship, PC (the "Estate Attorney").  The Estate Attorney estimates that its post-petition fees and expenses will not exceed the retainer that the Estate

8

Attorney received prior to the Petition Date ($10,000.00). The Debtors estimate accountant fees for 2013 will be $500.00. Debtors are current on the payment of quarterly fees to the United States Trustee.

**C.     Administrative Claim Bar Date:** All Administrative Claims arising on or before the Effective Date must be filed with the Court and served upon the Debtors and the U.S. Trustee within sixty (60) days after the Effective Date. Any Administrative Claim that is not timely filed and served as set forth above shall be discharged and forever barred, and shall not be entitled to any payments under the Plan.

## ARTICLE IV:  CLASSIFICATION AND TREATMENT OF OTHER CLAIMS

**A.     Classification.** Pursuant to 11 U.S.C. § 1122 of the Bankruptcy Code, a Claim is placed in a particular class for purposes of voting on the Plan and receiving payments thereunder only to the extent the particular Claim is an Allowed Claim in that class and such Claim has not been paid, released or otherwise settled before the Effective Date. A Claim shall be classified in a different class to the extent that it qualifies within the identification of that different class. In accordance with 11 U.S.C § 1123(a)(1), Administrative Claims are not classified under the Plan.

**B.     Identification of Classes and Treatment of Claims.** Except as otherwise provided herein, all Claims (except for Administrative Claims) are classified for the purposes of voting and treatment under the Plan as follows:

**1.     Class 1: The Bank of Gillette – Commercial Property.**

**a.     <u>Classification</u>.** Class 1 shall consist solely of the Secured Claim

of the Bank of Gillette against the Commercial Property.

        **b.**    <u>Treatment</u>.    Debtors are obligated to the Bank of Gillette pursuant to two (2) separate promissory notes that are secured by two (2) separate mortgages against the Commercial Property, which has an estimated fair market value of $569,000.00 (based on the Campbell County Assessor).  The first promissory note is dated April 10, 2006, and the original principal amount due thereunder was $195,000.00 (the "First Note").  The First Note is secured by a mortgage dated April 10, 2006.  The amount due and owing under the First Note as of the Petition Date was $73,579.44.  The First Note accrues interest at the rate of $13.55 per diem.  The second promissory note is dated March 19, 2008, and the original principal amount due thereunder was $536,000.00 (the "Second Note").  The Second Note is secured by a mortgage dated March 19, 2008.  The amount due and owing under the Second Note as of the Petition Date was $491,064.74.  The Second Note accrues interest at the rate of $81.17 per diem.  As of February 8, 2013, the aggregate amount due under both the First Note and Second Note (including per diem interest) was $578,757.46 (the "Commercial Loan Amount").  The Commercial Loan Amount is fully secured by the Commercial Property.  The Commercial Loan Amount will be amortized over 240 months and payable in monthly payments with interest thereon at the prime rate as reported by the Wall Street Journal on the Effective Date of the Plan plus 1.5% (the "Commercial Loan Interest Rate").  The Commercial Loan Amount will be subject to a six (6) year balloon payment due and payable six years after the Effective Date of the Plan. The Commercial Loan Interest Rate shall be adjusted every one-year anniversary date after the Effective Date

of the Plan based on the then reported prime rate subject to the same terms and conditions

provided herein.  After the fifth-year anniversary date of the Effective Date of the Plan, the

Commercial Loan Interest Rate shall be equal to the prime rate as then reported by the Wall

Street Journal plus 2.5%.  The Commercial Loan Interest rate shall have a floor of 4% and a

ceiling of 6.5% per annum for the first five (5) years after the Effective Date of the Plan, and

a floor of 4% and a ceiling of 7% per annum during the sixth year after the Effective Date of

the Plan.  Class 1 is impaired.

### 2.    Class 2:  The Bank of Gillette – 2008 Ford F-250.

**a.**    <u>Classification</u>.  Class 2 shall consist solely of the Secured Claim

of the Bank of Gillette against a 2008 Ford F-250, VIN#1FTSW21R68EA32157 (the "Ford

Truck").

**b.**    <u>Treatment</u>.    As of the Petition Date, the amount due under this

Secured Claim was $20,667.02 (the "Ford Truck Loan").  The Ford Truck is believed to have

a fair market value of $23,434.00 (in accordance with Kelley Blue Book valuations).  The

Bank of Gillette and the Debtors shall retain their respective legal, equitable and contractual

rights and obligations, including without any limitations, any security interest or lien with

respect to the Ford Truck.  The Debtors shall continue to pay the Ford Truck Loan in the

ordinary course and in accordance with the terms and conditions of any and all loans, security

interests or other contractual obligations giving rise to the Ford Truck Loan.  The Bank of

Gillette may exercise its legal and equitable rights with respect to the Ford Truck.  Except as

provided, the Bank of Gillette shall not receive anything under the Plan with respect to the

Ford Truck Loan.  Upon full payment of the Ford Truck Loan, The Bank of Gillette shall

release its lien against the Ford Truck.  Class 2 is not impaired.

**3.        Class 3: The Bank of Gillette – 2008 Chevrolet Tahoe.**

a.        <u>Classification</u>.  Class 3 shall consist solely of the Secured Claim

of the Bank of Gillette against a 2008 Chevrolet Tahoe, VIN#1GNFK13048R211268 (the

"Chevy Tahoe").

b.        <u>Treatment</u>.      As of the Petition Date, the amount due under this

Secured Claim was $18,326.05 (the "Chevy Tahoe Loan").  The Chevy Tahoe is believed to

have a fair market value of $30,400.00 (in accordance with Kelley Blue Book valuations).

The Bank of Gillette and the Debtors shall retain their respective legal, equitable and

contractual rights and obligations, including without any limitations, any security interest or

lien with respect to the Chevy Tahoe.  The Debtors shall continue to pay the Chevy Tahoe

Loan in the ordinary course and in accordance with the terms and conditions of any and all

loans, security interests or other contractual obligations giving rise to the Chevy Tahoe Loan.

 The Bank of Gillette may exercise its legal and equitable rights with respect to the Chevy

Tahoe.  Except as provided, the Bank of Gillette shall not receive anything under the Plan

with respect to the Chevy Tahoe Loan.  Upon full payment of the Chevy Tahoe Loan, The

Bank of Gillette shall release its lien against the Chevy Tahoe.  Class 3 is not impaired.

**4.        Class 4: Select Portfolio Servicing (CPCA Trust I) – First Mortgage**

**on Residence.**

a.        <u>Classification</u>.  Class 4 shall consist solely of the Secured Claim

of Select Portfolio Servicing against the Debtors' Residence (it is believed that Select Portfolio Servicing services this debt for CPCA Trust I).

**b.**    Treatment.    Debtors are obligated to Select Portfolio Servicing under a promissory note originally payable to the order of GMAC Mortgage Corporation dated June 27, 2005 (the "SPS Note") and secured by a mortgage dated June 27, 2005 (the "First Mortgage") against the Debtors' Residence, which has a value of $495,161.00 (according to the Campbell County Assessor).  The original principal amount due under the SPS Note was $468,366.00.  The amount due under the SPS Note on the Petition Date was $471,632.23 (the "First Mortgage Loan Balance").  The First Mortgage Loan Balance is a Secured Claim and consists of principal in the amount of $427,270.79 (the "First Principal Amount") and arrearages in the amount of $44,361.44 (the "First Arrearage Amount").  The First Principal Amount shall be paid in the ordinary course and in accordance with the terms and conditions of the First Mortgage.  The First Arrearage Amount shall be paid to Select Portfolio Servicing over sixty (60) months in the monthly amount of $739.36 commencing on the Effective Date of the Plan.  Full payment of the First Arrearage Amount will cure the arrearage and cause any default occurring prior to the Petition Date to be waived notwithstanding the terms of the SPS Note or First Mortgage or other agreement between the parties.  Select Portfolio Servicing shall retain its mortgage interest against the Residence. Except as provided, Select Portfolio Servicing shall not receive anything under the Plan with respect to the SPS Note and/or First Mortgage.  Class 4 is impaired.

**5.    Class 5: HSBC Mortgage Services – Second Mortgage on Residence.**

     **a.**    <u>Classification</u>.  Class 5 shall consist solely of the Secured Claim of HSBC Mortgage Services against the Debtors' Residence.

     **b.**    <u>Treatment</u>.    Debtors are obligated to HSBC Mortgage Services under a promissory note originally payable to the order of Capital One Home Loans, LLC dated March 24, 2006 (the "HSBC Note") and secured by a mortgage dated March 24, 2006 (the "Second Mortgage") against the Debtors' Residence, which has a value of $495,161.00 (according to the Campbell County Assessor).  The original principal amount due under the HSBC Note was $79,500.00.  The amount due under the HSBC Note on the Petition Date was $65,753.78 (the "Second Mortgage Loan Balance").  The Second Mortgage Loan Balance is a Secured Claim and consists of principal in the amount of $62,240.20 (the "Second Principal Amount") and arrearages in the amount of $3,513.58 (the "Second Arrearage Amount").  The Second Principal Amount shall be paid in the ordinary course and in accordance with the terms and conditions of the Second Mortgage.  The Second Arrearage Amount shall be paid to HSBC Mortgage Services over sixty (60) months in the monthly amount of $58.56 commencing on the Effective Date of the Plan.  Full payment of the Second Arrearage Amount will cure the arrearage and cause any default to be waived notwithstanding the terms of the HSBC Note or Second Mortgage or other agreement between the parties.  HSBC Mortgage Services shall retain its mortgage interest against the Residence.  Except as provided, HSBC Mortgage Services shall not receive anything under the Plan with respect to the HSBC Note and/or Second Mortgage.  Class 5 is impaired.

     **6.**    **Class 6: Internal Revenue Service – Secured Claim.**

     **a.**    <u>Classification</u>.  Class 6 shall consist solely of the Secured Claim of the Internal Revenue Service.

     **b.**    <u>Treatment</u>.    Debtors are obligated to the IRS for unpaid income tax for the tax periods ending 12/31/09 and 12/31/10 that were assessed on 11/15/10 and 11/21/11.  The amount of this Claim is $106,341.78 (includes tax plus interest and penalties) as of the Petition Date (the "Secured Tax Amount").  Pursuant to tax liens filed with the Campbell County Clerk (Recording Numbers U338325, U326365 and U326366), the Secured Tax Amount is a Secured Claim secured by certain Estate Assets.  The Secured Tax Amount will be paid in full, in equal monthly installments beginning on the Effective Date of the Plan, so that the final payment due thereunder shall be paid on or before September 11, 2017.  The Secured Tax Amount shall bear interest at the rate in effect during the calendar month in which the Confirmation Date is included. Class 6 is impaired.

     **7.**    **Class 7:  Internal Revenue Service – Priority Tax Claim.**

     **a.**    <u>Classification</u>.  Class 7 shall consist solely of the Priority Tax Claim of the Internal Revenue Service.

     **b.**    <u>Treatment</u>.    Debtors are obligated to the IRS for unpaid income tax for the December 31, 2011 tax period that was assessed on August 20, 2012 ($65,056.00 plus $799.38 interest).  The total amount of the Priority Tax Claim as of the Petition Date was $65,855.38 (the "Priority Tax Amount").  The Priority Tax Amount will be paid in full, in equal monthly installments beginning on the Effective Date of the Plan, so that the final payment due thereunder shall be paid on or before September 11, 2017.  The Priority Tax

Amount shall bear interest at the rate in effect during the calendar month in which the Confirmation Date is included.  Class 7 is impaired.

        **8.**    **Class 8.  Unsecured Claims.**

        **a.**    <u>Classification</u>.  Class 8 shall consist of all Allowed Unsecured Claims.

        **b.**    <u>Treatment</u>.     Each holder of an Allowed Unsecured Claim will receive payment Pro Rata with all holders of Allowed Unsecured Claims from available Proceeds after (i) all Claims have been adjudicated in accordance with this Plan; (ii) payment in full of Allowed Administrative Claims; and, (iii) after applicable payments to the Allowed Secured Claims and Allowed Priority Tax Claims.   The Allowed Unsecured Claims total approximately $209,745.57.  Class 8 will be paid a minimum of $349.58 per month Pro Rata without interest for a period of sixty (60) months commencing on the Effective Date of the Plan.  Class 8 is anticipated to receive a distribution of at least ten percent (10%).  Class 8 is impaired.

## ARTICLE V:  MEANS FOR EXECUTION OF THE PLAN

    **A.**    **Retention of Estate Assets.**   As of the Effective Date and except as provided in Article II and below, the Debtors shall retain all of the Estates Assets, including, but not limited to, claims, causes of action, rights or interests belonging to Debtors or the Bankruptcy Estate, arising under federal or state law, free and clear of any liens, claims, interests or encumbrances of every nature except those rights, claims, liens, interests or claims expressly preserved within or created by this Plan.  To ensure that all instruments of transfer and other

documents are duly executed on behalf of the Bankruptcy Estate, the Debtors, on the

Effective Date, shall be deemed, by operation of law and the Confirmation Order and without

need for any further action, to hold in irrevocable power of attorney on behalf of the

Bankruptcy Estate with respect to the Bankruptcy Estate and the Estate Assets.

**B.     Assumption or Rejection of Executory Contracts and Unexpired Leases.**

In accordance with 11 U.S.C. § 365, the unexpired lease that the Debtors have entered into with

Miracle Ear (Miracle Ear rents space in the Commercial Property) shall be assumed within the

Confirmation Order.  The Debtors shall not assume any other executory contract or unexpired lease

that was entered into prior to the Petition Date and that remains in effect on the Effective Date.

**C.     Authority to Make Distributions and Payments.**   Subject only to the

requirements of the Plan and any Final Order of the Court, the Debtors shall be responsible

for making all distributions and payments proposed to be made under the Plan and for

otherwise implementing the Plan and complying with Final Orders of the Court.   All

payments contemplated by this Plan shall be made in cash or cash equivalents to the holders

of Allowed Claims.  Debtors shall be authorized to make the following distributions from

Proceeds:

**a.**     Distributions to holders of Allowed Claims in accordance with the Plan;

and

**b.**     Distributions for Allowed Living Expenses of the Debtors; provided,

however, that any payment of the Allowed Living Expenses substantially complies with said

Allowed Living Expenses identified within Exhibit "F" attached to Debtors' Disclosure

Statement.

c.      Distributions for Allowed Business Expenses of the Debtors; provided, however, that any payment of the Allowed Business Expenses substantially complies with said Allowed Business Expenses identified within Exhibit "F" attached to Debtors' Disclosure Statement.

**D.      Authority to Dispute or Settle Claims.**  Subject to the provisions of the Bankruptcy Code, Bankruptcy Rules and any Final Order of the Court, the Debtors in their sole discretion may object to the validity, amount or classification of any Claim asserted in this case and enter into an agreement with regard to the classification or amount of any such Claim subject to the Plan. (See Article VI below).

**E.      Authority to Maintain and to Sell Estate Assets.**  Subject only to the requirements of the Plan and any Final Order of the Court, the Debtors shall, for the benefit of the creditors, maintain the Estate Assets in such condition so as to avoid undue dissipation of the Estate Assets, including without limitation, payment of applicable taxes and any reasonable fees and expenses for the maintenance of the Estate Assets shall be paid out of the Estate Assets prior to the payment of any Allowed Claim.  In addition to the authority to maintain the Estate Assets, the Debtors, in their sole discretion and for the benefit of the creditors, shall have the authority to sell, transfer or otherwise dispose of the Estate Assets free and clear of any liens, claims or encumbrances of any nature whatsoever, excluding any valid and perfected claims of the Internal Revenue Service, and except those liens, claims or encumbrances specifically preserved within this Plan; provided, however, that any such sale,

18

transfer or disposition of the Estate Assets is made with the prudence or care of a reasonable businessperson. Any fees or expenses related to the sale, transfer or other disposition of the Estate Assets shall be paid from Estate Assets.

      **F.**     **Debtors' Right to Employ Professionals.** Debtors may require the assistance of professionals with the maintenance, management and disposition of the Estate Assets in accordance with the terms and conditions of this Plan. After a Confirmation Order is entered by the Court, Debtors may employ counsel, consultants, accountants, realtors or any other professional that they deem reasonably necessary to implement the terms and conditions of this Plan without the need for further Court approval.

## ARTICLE VI: DISPUTED CLAIMS

      **A.**     **Allowance of Claims.** This Plan constitutes an objection by the Debtors to every Claim as to which a Proof of Claim was not filed prior to the Claims Bar Date or not allowed by the Court as a timely filed Claim. Nothing set forth herein shall be deemed a waiver of any objection or defense to any Claim. After the Effective Date, objections to Claims shall be made only by the Debtors. The Debtors may, at any time up to the six (6) month anniversary of the Effective Date, file an objection to any Claim that in the Debtors' opinion should be disallowed in whole or in part. The period in which to file any such objections may be extended with Court approval. This objection procedure shall apply, without limitation, to Claims arising from the rejection of executory contracts and unexpired leases. Upon the filing of any such objections, such Claims will be considered a Disputed Claim. The Allowance of a Claim shall be a conclusive determination of Debtors' personal

liability and shall be binding on all other state and/or federal courts.

**B.      Deadline for Responding to Claim Objections.**  Within thirty (30) days after

the filing of an objection, the holder of the Claim against which an objection was filed must

file a response to the objection with the Court and serve a copy on the Debtors and the

Debtors' counsel.  Failure to file a response within the thirty (30) day time period shall cause

the Court to enter a default judgment against the non-responding Claim holder, thereby

granting the relief requested in the Claim objection.

**C.      Allowance of Disputed Claims and Payment of Distribution.**  Upon the

allowance of a Disputed Claim, by either compromise or settlement or by Final Order, the

Debtors shall distribute to the holder of such Allowed Claim the distributions to which such

holder shall be then entitled consistent with this Plan and the timing and terms of distribution

to other members of the same Class.

**D.      Reserve for Disputed Claims.**  Unless provided otherwise within this Plan, the

Debtors shall make an adequate reserve for all Pro Rata distributions on Disputed Claims.

No holder of a Disputed Claim shall be entitled to recover any distributions or payments

made to holders of Allowed Claims regardless of any delay in obtaining an order allowing or

estimating a Disputed Claim.   In the event there are no Disputed Claims, any reserve

withheld under this section shall be distributed Pro Rata to those creditors comprising Class

8.

## ARTICLE VII. LITIGATION.

The Debtors shall have the right to commence any adversary proceeding, lawsuit or

other litigation to enforce any claim or interest belonging to the Debtors or the Bankruptcy

Estate, including, without limitation, Avoidance Actions and to enforce the provisions of this

Plan. The Debtors shall further have the right to defend against any claim, cause of action or

right asserted against the Debtors or the Estate Assets.

## ARTICLE VIII. POST-CONFIRMATION DEFAULT.

In the event of any default by the Debtors of any payment to any Class arising under

the terms of the Plan, the Debtors shall have thirty (30) days within which to cure any default

in payments due under the Plan after the date of issuance of written notice from any holder of

a Claim. Written notice shall be provided to the Debtors and counsel for the Debtors as

provided in Article XII. In the event that the Debtors fail to cure any default in the

requirements to make payments under the Plan within the time constraints contained herein

then the Debtors shall be deemed to be in default under the terms of the Plan.

## ARTICLE IX. CONFIRMATION NOTWITHSTANDING 11 U.S.C. § 1129(a)(8)

The Debtors request that, if necessary, the Court confirm this Plan, as it may be

modified prior to the Confirmation Date, pursuant to 11 U.S.C. § 1129(b), notwithstanding

the failure of the Plan to satisfy the requirements of 11 U.S.C. § 1129(a)(8).

## ARTICLE X. CONFIRMABILTY AND SEVERABILITY OF THE PLAN

The confirmation requirements of 11 U.S.C. § 1129 of the Bankruptcy Code must be

satisfied. A determination by the Court that the plan is not confirmable under 11 U.S.C. §

1129 shall not limit or affect the Debtors' ability to modify the Plan to satisfy the

confirmation requirements set forth in 11 U.S.C. § 1129.

## ARTICLE XI. EFFECT OF CONFIRMATION.

**A.    Confirmation of Stay.**  From and after the Confirmation Date, the stay of an act against any Estate Assets under 11 U.S.C. § 362(a) shall continue until the entry of a Final Order of this Court pursuant to General Order 12-02.

**B.    Binding Nature.**  Except as otherwise expressly provided in the Plan, after the Effective Date, all persons or entities who have been, are or may be holders of Claims against the Debtors or Estate Assets arising before the Effective Date shall be enjoined from taking any of the following actions against or affecting the Debtors, the Bankruptcy Estate or the Estate Assets, regarding such Claims (other than action brought to enforce any rights or obligations under the Plan):

1.    Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors, the Bankruptcy Estate or the Estate Assets (including all suits, actions, and proceedings that are pending as of the Effective Date);

2.    Enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or other against Debtors, the Bankruptcy Estate or Estate Assets;

3.    Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien, security interest or other right against the Debtors, the Bankruptcy Estate or the Estate Assets;

4.    Asserting any right of subrogation or recoupment of any kind, directly or

22

indirectly, against any obligation due the Debtors, the Bankruptcy Estate or the Estate Assets;

5.    Proceeding in any manner and in any place whatsoever that does not conform to or comply with the provisions of the Plan.

This Section shall not prevent the Internal Revenue Service from offsetting any pre-petition refunds against pre-petition debt or from pursuing collection of post-petition liability.

**C.    No Discharge.**  Except as provided specifically herein, this Plan shall not grant the Debtors a discharge under 11 U.S.C. § 1141(d), and the Debtors shall not receive any discharge of any Claim or Claims as a result of confirmation of this Plan.  Rather, upon satisfaction of the terms and conditions of the Plan or in accordance with 11 U.S.C. § 1141(d)(5) and General Order 12-02, Debtors may request that the Court grant the Debtors a discharge.

**D.    Release of Debtors.**  The rights afforded in the Plan and the treatment of all Claims shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever against the Debtors and the Estate Assets; and except as otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed released for any and all Claims, including demands and liabilities that arose before the Effective Date, regardless of whether (a) a proof of claim evidencing such debt was filed or deemed filed under Bankruptcy Code; (b) a Claim based on such debt is an Allowed Claim; or (c) the holder of a Claim based on such debt has accepted the Plan.  Except as otherwise provided in the Plan, the Confirmation Order shall be a judicial determination of release of all liabilities of the Debtors.  Such release shall void any judgment obtained against the Debtors.

## ARTICLE XII.  GENERAL PROVISIONS.

**A.      Amendments and Modifications.**  The Debtors may propose amendments or modifications of this Plan at any time prior to entry of the Confirmation Order.  Any provisions that the Court may determine render this Plan unconfirmable may be severed or altered at the option of the Debtors.  After entry of a Confirmation Order, the Debtors may, with approval of the Court, and so long as it does not materially and adversely affect a Claim holder, remedy any defect or omission, or reconcile inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  Furthermore, nothing contained in this Article shall limit the Debtors' ability to modify the Plan pursuant to 11 U.S.C. § 1127.

**B.      Settlement Authority.**  With respect to the settlement of Avoidance Actions, Claim objections or other litigation, the Debtors shall have the authority to settle such actions, litigations or objections as set forth with this Plan.

**C.      Confirmation Order.**  To the extent necessary, the Confirmation Order shall contain any provisions necessary to provide for the substantial consummation of the Plan on the Effective Date, including designating Bankruptcy Rule 7062 not applicable to the Confirmation Order.

**D.      Further Action.**  Nothing contained in the Plan shall prevent the Debtors from taking such actions as may be necessary to consummate the Plan, even though such actions may not specifically be provided for within the Plan.

**E.      Exhibits.**  All Exhibits attached to the Plan are incorporated herein by

reference and are intended to be an integral part of this document as though fully set forth in the Plan.

**F.     Binding Effect.**  The Plan shall be binding on and inure to the benefit of the Debtors, all holders of Claims, all parties in interest having notice of this Chapter 11 case and their respective successors and assigns regardless of whether those parties voted to accept the Plan.

**G.     Ratification.**  The Confirmation Order shall ratify all transactions effectuated by the Debtors during the pendency of this Chapter 11 case.

**H.     Notices.**  Whenever the Plan requires notice to be given, such notice shall be given to:

Todd and Kimberly Hildebrand
1001 South 4J
Gillette, WY 82716

and

Winship & Winship, P.C.
Brad T. Hunsicker
P.O. Box 548
Casper, WY 82602-0548

## ARTICLE XIII.  RETENTION OF JURISDICTION.

After the Effective Date and even after the Chapter 11 case has closed, the Court shall retain jurisdiction over the above-named Chapter 11 case and all matters arising under, arising in or relating to the Debtors' Chapter 11 case, including proceedings to:

**A.**     Ensure that the Plan is carried out;

**B.**     Enter such orders as may be necessary or appropriate to implement,

25

consummate or enforce the provisions of the Plan and all contracts, instruments, releases,

indentures and other agreements or documents created in connection with the Plan or the

Disclosure Statement;

**C.**     Consider any modification of the Plan under Bankruptcy Code;

**D.**     Hear and determine all Claims, controversies, suits and disputes against the

Debtors to the full extent permitted under 28 U.S.C. § 1334 and 28 U.S.C. § 157;

**E.**     Allow, disallow, determine, liquidate, classify, estimate or establish the priority

or secured or unsecured status of any Claim, including the resolution of any and all

objections to the allowance or priority of Claims and to extend the date or dates by which

objections to Claims must be filed;

**F.**     Hear and determine any and all challenges regarding the dischargeability of any

Claim under of the Bankruptcy Code;

**G.**     Hear, determine and adjudicate any litigation involving the Avoidance Actions

or other claims or causes of action involving Estate Assets;

**H.**     Decide or resolve any motions, adversary proceedings, contested or litigated

matters and any other matters and grant or deny any applications involving the Debtors that

may be pending on or commenced after the Effective date;

**I.**     Resolve any cases, controversies, suits or disputes that may arise in connection

with the consummation, interpretation or enforcement of the Plan, or any person's or entity's

obligations incurred in connections with the Plan, or any other agreements or documents

relating to any of the foregoing, including the interpretation or enforcement of any rights,

26

remedies or obligations under any of the foregoing;

**J.**     Hear and determine all objections and disputes to requests for compensation
and/or reimbursement of expenses that may be made for fees and expenses payable by the
Debtors to any professional, including attorneys, consultants, accountants, realtors or others;

**K.**     Enforce any Final Order, the Confirmation Order, the final decree and all
injunctions contained in those orders;

**L.**     Enter an order concluding and terminating this case;

**M.**     Correct any defect, cure any omission or reconcile any inconsistency in the
Plan or the Confirmation Order;

**N.**     Determine all questions and disputes regarding title to Estate Assets and any
other assets of the Debtors or the Bankruptcy Estate;

**O.**     Classify the Claims of any holder of any Claim and the treatment of those
Claims under the Plan, to re-examine Claims that may have been allowed for purposes of
voting and to determine objections that may be filed to any Claims;

**P.**     Take any actions described in the Plan involving the post-confirmation
Debtors;

**Q.**     Enforce, by injunctions or otherwise, the provisions set forth in the Plan, the
Confirmation Order, any final decree and any Final Order that provides for any adjudication
of any issue by the Bankruptcy Court;

**R.**     Enter and implement such orders as are necessary or appropriate if the
Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

27

**S.**      Enter a Final Decree as contemplated by Bankruptcy Rule 3022

**T.**      To hear and determine any and all applications for the assumption of executory

contracts or unexpired leases and to hear any and all Claims arising therefrom;

**U.**      To hear and determine any tax disputes concerning the Bankruptcy Estate;

**V.**      To hear and determine the value of any collateral of any Estate Assets if the

valuation thereof is challenged by the Debtors; and,

**W.**      To determine such other matters as may be set forth in the Confirmation Order

or which may arise in connection with the Plan or the Confirmation Order including an order

discharging the Debtors or Estate Assets from any and all pre-petition debts except as set

forth in this Plan.

## ARTICLE XIV.  SUPREMACY CLAUSE.

In the event of any conflict between the Disclosure Statement and the terms of the

Plan, the terms of the Plan shall control.

**DATED** this 29th day of April, 2013.

TODD ADAM HILDEBRAND
KIMBERLY SUE HILDEBRAND

By: _____/s/_____
    Todd Adam Hildebrand

By: _____/s/_____
    Kimberly Sue Hildebrand

By: _____/s/_____
    Brad T. Hunsicker
    (Wyoming State Bar No. 7-4579)
    WINSHIP & WINSHIP, P.C.
    100 North Center Street, Sixth Floor

PO Box 548
Casper, WY  82602
brad@winshipandwinship.com